***********
Having reviewed the competent evidence of record and the positions of the parties, the Full Commission hereby modifies the Order by Deputy Commissioner Taylor filed February 5, 1998, and the Opinion and Award of Deputy Commissioner Holmes dated January 19, 2001.
 ***********
The Full Commission finds as fact and concludes as matters of law the following:
 FINDINGS OF FACT
1. Plaintiff is a 41 years old, has a ninth grade education, and reportedly cannot read. He was found to be disabled by the Social Security Administration as a result of his lack of education and the injuries, surgery, and treatment to his cervical spine.
2. On October 22, 1991, and on July 1, 1992, plaintiff suffered admittedly compensable injuries by accident to his back during his employment with defendant-employer. The October 22, 1991, injury primarily concerns an injury to plaintiff's cervical and upper back, and many of plaintiff's medical records reflect complaints to this area of the body. The July 1, 1992, injury is to the low back, reported as a "low back strain" when, while lifting 2 inch by 10 foot boards, plaintiff felt a catch in his back and could not straighten up. The issues currently before the Full Commission primarily concern the nature and degree of plaintiff's injury to his low back from the July 1, 1992, injury.
3. The compensability of plaintiff's injuries were initially heard before Deputy Commissioner Wanda Taylor. In an Opinion and Order filed on July 28, 1997, Deputy Commissioner Taylor made the following Findings of Fact which are significant to this action:
 a. "Plaintiff had a prior injury [before 1991] to his back when he was eighteen years old which caused two `slipped discs' in his lower back."
 b. "As a direct and proximate result of his October 22, 1991 and July 1, 1992 compensable injuries by accident, plaintiff suffered injury to his back, resulting in chronic pain syndrome, resulting in major depression and anxiety."
In addition, Deputy Commissioner Taylor made the following Conclusions of Law which are significant to this action:
 a. "On October 22, 1991 and July 1, 1992, plaintiff sustained injuries by accident arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6)."
 b. "As a direct and proximate result of plaintiff's work-related injuries by accident on October 22, 1991 and on July 1, 1992, plaintiff sustained back injuries, chronic pain syndrome, depression and anxiety disorder. These conditions require future medical treatment."
 c. "Defendant-employer and its insurer shall provide plaintiff such medical treatment as may be reasonably required to effect a cure or give relief to plaintiff including treatment by his psychiatrist, Dr. Giduz, his neurologist, Dr. Pact and his orthopaedist, Dr. Grubb. N.C.G.S. § 97-25."
Neither party timely appealed from this Opinion and Order and it has become final by operation of law.
4. Plaintiff filed a motion to compel payment of medical bills and for sanctions for defendants' alleged failure to pay medical bills in accordance with Deputy Commissioner Taylor's July 28, 1997, Opinion and Award. The case is currently before the Full Commission as a result of this motion and subsequent orders and opinions. The essential issue in this case, at this time, is the nature and extent of plaintiff's injuries from the compensable October 22, 1991, and July 1, 1992, injuries and whether defendants are responsible for the low back medical treatment and surgery in dispute. Specifically, defendants refused to pay for surgery for a herniated disc in plaintiff's lumbar spine.
5. On July 1, 1992, plaintiff, while employed in the warehouse of defendant-employer, injured his back when he got off a lift and started lifting 2-inch by 10-foot boards, felt a "catch" in his lower back, and could not straighten himself up.
6. On July 17, 1992, Ms. Wanda Ellington, R.N., the plant nurse, completed a Employer's Report of Injury and noted that plaintiff had sustained a "low back strain."
7. On or about July 21, 1992, plaintiff and defendants entered into a Form 21 Agreement for compensation for disability as a result of the July 1, 1992, injury by accident. The Agreement was approved by the Commission and was not appealed by either party. The Agreement recites that plaintiff sustained a "back strain" on July 1, 1992.
8. In response to the 1992 low back injury, plaintiff was seen by Dr. Brenner and Dr. Shupeck before he was referred to Dr. Grubb. Extensive x-rays were taken of plaintiff's spine, including a myelogram of the lumbar spine in 1992. The July 13, 1992, myelogram and enhanced CT Scan revealed "minor bulging at L2-3 and L3-4." A consultation report from Dr. Shupeck dated July 13, 1992, indicated that Plaintiff had no bowel or bladder problems and no lower extremity problems.
9. Plaintiff was first seen by Dr. Stephen Grubb on November 11, 1992. Plaintiff reported symptoms of left-side shoulder blade pain, neck pain, tightness over his left shoulder and left arm and mid-back pain. Plaintiff was requested to complete a pain diagram on which he reported additional symptoms of pain in the low back radiating into the right hip and pain radiating down the back portion of plaintiff's right leg. Dr. Grubb's chart notes, however, do not mention any low back or leg pain or other symptoms. Physical examination of plaintiff's lower spine revealed a steady gait, steady and intact heel-to-toe walking, range of motion from fingertips to floor, and negative sitting straight leg raising (SLR). There were no findings consistent with the distribution of pain in the lower extremity consistent with the pain profile completed by plaintiff. Dr. Grubb's initial diagnosis was cervical degenerative disc disease and probable early thoracic degenerative disc disease. Dr. Grubb did not diagnose a low back problem at this time.
10. Plaintiff was again seen by Dr. Grubb on December 1, 1992. Again the chief complaint was pain between his shoulder blades which was related to the 1991 injury. The diagnosis was cervical degenerative disc disease and T4 hemangioma. This record fails to report symptoms, complaints, or diagnosis for a lumbar injury.
11. Plaintiff appeared again in Dr. Grubb's office on December 2, 1992, and January 27, 1993, with no mention of any lumbar complaints or injury. All symptoms, diagnosis, and treatment was for cervical and thoracic conditions.
12. On March 10, 1993, Plaintiff first saw Dr. Grubb for a low back problem. The note for this visit reports "acute onset of bilateral, lateral thigh pain with increase of his normal low back pain when he got out of bed 4 days ago." Plaintiff's left thigh pain had resolved at the time of the doctor's appointment, but right thigh pain continued. A history was provided by plaintiff of having sustained an injury when he was eighteen when he fell with a 400 pound refrigerator and suffering a "slipped disc" and was out of work for a year. Plaintiff's examination by Dr. Grubb revealed a marked right antalgic gait, normal heel and toe walking, bending limited to 3" from the knees, tender lumbosacral area, and negative sitting straight leg raises. This examination also reports that plaintiff donated a kidney for a transplant to his daughter and Dr. Grubb advised plaintiff to report his bloody stools to his kidney doctor.
13. Dr. Grubb's note for March 15, 1993, reports a telephone call with plaintiff's wife indicating that plaintiff was still in pain, but was not getting any worse, and that he was working.
14. Plaintiff returned to Dr. Grubb's office on March 31, 1993, with continued complaints of low back and right lateral leg pain. Physical examination revealed right antalgic gait with heel and toe walking with slight unsteadiness. Lumbar flexion was past the knees. Lumbar spine was non-tender. Motor and sensory examination was normal and straight leg raising was negative. Plaintiff was given a diagnosis of degenerative disc disease.
15. Plaintiff was seen by Dr. Grubb on June 12, 1993, when it was noted that plaintiff continued with low back pain, but that it was no longer radiating into his lower extremity.
16. On June 25, 1993, plaintiff was seen by Dr. Grubb for a cervical discogram and post-discogram CT scan. The office note makes no mention of any low back or lumbar complaints.
17. On July 7, 1993, plaintiff was again seen by Dr. Grubb. This visit primarily concerned the results of the diagnostic testing on plaintiff's cervical spine and discussion of cervical surgery. The chart notes, however, report that plaintiff "suffers with low back pain."
18. Plaintiff was seen on July 26, 1993 and August 3, 1993, in conjunction with his anticipated cervical fusion surgery. The chart notes make no mention of any low back, lumbar or lower extremity problems.
19. Plaintiff had surgery on his cervical spine on August 5, 1993.
20. Plaintiff was seen by Dr. Grubb on September 1, 1993. A neurological examination was performed and concerning the low back reported normal gait and intact heel and toe walking. No low back, lumbar, or lower extremity problems were reported.
21. Plaintiff was seen by Dr. Grubb on November 3, 1993 and reported that in the prior week while getting out of bed plaintiff experienced a sharp pain in his low back and has continued with soreness in that area. Physical examination revealed a steady gait, intact heel and toe walking, steady tandem gait, tenderness to palpitation at L3-4 on left, reflexes at 2+ in knees and 2+ in left ankle and absent in right ankle, and negative bilateral straight leg raising.
23. Plaintiff was again examined by Dr. Grubb's office on December 1, 1993. Plaintiff complained of pain in the right low back area. Plaintiff stated that riding bothers his back the most. (The medical records indicate that plaintiff lives on a farm, but it is not clear what plaintiff was "riding.") Physical examination revealed a slight right antalgic gait, heel and toe walking without problems, steady tandem gait, and negative straight leg raising.
24. On January 19, 1994, plaintiff again made complaints about his low back and reported that this condition has been hurting for about 2 years and that he has been on exercises in the past. Plaintiff complained of a catching sensation in his lower back with pain into the right lower extremity to the level of the knee. Physical examination revealed a normal gait, normal heel and toe walking, normal tandem gait, reflexes of 2+ in knees and 1+ in ankles, 5/5 lower extremity strength, negative straight leg raising, and forward bending within 12 inches from the floor, with lateral bending right of fingertips four inches from knee and left 1 inch from knee.
25. On February 15, 1994, plaintiff presented to Dr. Grubb with his gait intact, heel and toe walking intact, and normal motor exam. There was no complaint of low back pain, but there was complaint of mid-thoracic pain.
26. On March 1, 1994, plaintiff complained to Dr. Grubb of some occasional leg pain and muscle tightness 2-3 times per week.
27. On March 22, 1994, was examined again by Dr. Grubb. This examination revealed a normal gait, intact heel and toe walking, forward flexion to within 4 inches of the floor, lateral bending to within 3 inches of the knee, and negative straight leg raising. The diagnosis was degenerative disc disease.
28. On May 20, 1994, plaintiff called Dr. Grubb' office and reported that he cannot sleep because of aching in his feet and legs. Plaintiff's work requires him to sit in a chair that does not provide any back support. In the past week he has had increased symptoms of pain in his low back which radiates from his coccyx area and down the lateral aspect of his left leg and with burning in both feet. From May 20 through June 21, 1994, plaintiff and Dr. Grubb' office have numerous telephone conversations wherein plaintiff complains of pain and difficulties in performing his work.
29. On June 22, 1994, plaintiff was examined by Dr. Grubb. Plaintiff had a right antalgic gait and a difficult time with heel and toe walking. Plaintiff was tender to palpation in the mid thoracic area. Plaintiff's motor exam was grossly intact.
30. Plaintiff was examined on August 2, 1994, and plaintiff complained that after standing 15-20 minutes his legs would go numb. Examination revealed a slight antalgic left gait. Plaintiff's motor examination was grossly intact.
31. Plaintiff saw Dr. Grubb on September 13, 1994, where the examination revealed a left antalgic gait, absent Achilles in the right and 2 in left, and negative straight leg raising.
32. From June through October, 1994, Dr. Grubb's notes include several telephone conversation with plaintiff wherein plaintiff was asking that his work duties be changed, or that he be taken off from work.
33. On November 16, 1994, Dr. Grubb reported that plaintiff had qualified for social security disability benefits and that plaintiff subsequently quit work. Plaintiff complained of some low back pain and significant pain into the right posterior thigh. Dr. Grubb's impression was a probable lumbar herniated nucleus pulposus. No physical examination was reported.
34. On December 6, 1994, Dr. Grubb reported that plaintiff returned for examination for an acute flair-up of pain that occurred a few weeks prior. Dr. Grubb explained that in November he suspected that plaintiff "might have a new herniated nucleus pulposus"; however, plaintiff improved and seemed to return to his baseline. Physical examination revealed mild lumbar tenderness and mild lumbar sciatic scoliosis. Plaintiff had forward bending of fingertips to 4 inches from the floor, normal left lateral bending, and right lateral bending slightly limited to 3-4 inches from knee. Plaintiff did not report back or lower extremity discomfort from the bending activities.
35. Plaintiff was examined on January 17, 1995. His examination revealed a normal gait, heel and toe walking intact, tandem walking intact, forward flexion within 18 inches from the floor, and normal reflexes with exception of knee reflexes at 1+ and symmetrical and ankle reflexes absent on right and 1+ on left. The diagnosis included degenerative disc disease and possible fibromalgia.
36. On March 15, 1995, plaintiff appeared in Dr. Grubb's office and reported that he was not having any complaints related to his low back. Physical examination revealed a normal gait, intact heel and toe walking, forward flexion to allow touching of knees, normal reflexes except for absent at right ankle, and negative straight leg raising.
37. Plaintiff was seen on July 17, 1995, with complaints primarily centered on his shoulder and scapular areas. Physical examination reported a right antalgic gait, heel and toe walk without ataxia, grossly intact motor and sensory examinations, and negative sitting straight leg raising.
38. Plaintiff was seen by Dr. Grubb on February 28, 1996, with complaint of pain in his legs. Physical examination revealed a right antalgic gait, heel and toe walking without ataxia, limited forward flexion, 2+ reflexes bilaterally throughout upper and lower extremities, grossly intact motor and sensory examination, and negative seated straight leg raising.
39. An April 10, 1996 note in Dr. Grubb' records reveals that an MRI was performed on plaintiff which revealed a question of a disc bulge at T2-3 and possibly at T6-7. As a result of this study a discogram was performed which revealed a central posterior tear at C5-6 and C6-7 with pain reproduction similar to his complaints in his shoulders and upper back. Subsequently a thoracic discogram was performed with abnormalities noted at T8-9 and T9-10 which reproduced plaintiff's left sided mid to low thoracic pain. The diagnosis of thoracic degenerative disc disease was added.
40. Plaintiff called Dr. Grubb' office on October 30, 1996, complaining of right leg pain and numbness, describing the pain as a burning into the hip, inside of the leg with some numbness. The note indicates that these complaints are not a big change from his normal symptoms. Plaintiff denied any change in his bladder or bowel.
41. On November 19, 1996, plaintiff again called Dr. Grubb's office with complaints of right leg pain with the statement the symptoms are different from previous leg pain.
42. Plaintiff was seen by Dr. Grubb on December 4, 1996, with complaints of pain in his right thigh, numbness and weakness in his right foot if he walks any distances, and throbbing in his right leg. Physical examination revealed that plaintiff was unnecessarily ambulating with a cane, that he had a right antalgic gait, intact heel and toe walk, flexion of fingertips to knees, muscle tightness in the paraspinals on the right, normal 2+ reflexes bilaterally, and negative seated straight leg raising.
43. On December 11, 1996, Dr. Grubb was deposed in conjunction with the initial hearing before Deputy Commissioner Taylor. In this deposition, Dr. Grubb was asked about the history of plaintiff's complaints concerning low back pain and leg pain. In particular, counsel asked and Dr. Grubb answered the following question:
 "Q. Doctor, do you have an opinion as to whether this lower back pain and the right leg pain, and/or the left leg pain, are related to his workers' compensation claim?
 A. I do not have sufficient information based on that initial evaluation to make that judgment."
No testimony was elicited by either counsel to relate plaintiff's low back complaints to his 1991 or 1992 workers' compensation injury. The deposition primarily centered on plaintiff's upper back and cervical condition.
44. On August 6, 1997, plaintiff returned to Dr. Grubb for a routine follow-up appointment. Plaintiff complained of pain in his lateral right hip which radiates into his leg. Plaintiff reported that the pain was present all the time and is aggravated with walking, bending and lifting. Physical examination revealed that plaintiff was walking with a cane. Plaintiff was able to flex forward with fingertips 16 inches from the floor with flexion aggravating low back pain. Reflexes were 2+ and symmetrical. Plain film x-rays showed mild L4-5 disc space narrowing. Dr. Grubb recommended an MRI.
45. Dr. Grubb's September 3, 1997, chart note indicates that the MRI reveals a large left L5-S1 herniated nucleus pulposus, a right paracentral L4-5 disc bulge, central disc bulges at L2-3 and L3-4, desiccated discs from L2-sacrum, and an hemangioma in the L3 body. The diagnosis was degenerative disc disease with L5-S1 HNP.
46. Plaintiff was examined by Dr. Grubb on September 10, 1997, with complaints of pain in his right buttock and his leg to the lateral calf. Physical examination revealed ambulation with a cane, ability to heel and toe walk, flexion of fingertips to 18 inches from the floor with increased back pain and leg pain with flexion, and positive straight leg raising on right with buttock pain. Plaintiff was prescribed a myelogram.
47. Dr. Grubb' November 21, 1997, chart note indicates that plaintiff had recently complained of back and leg pain for which he had an MRI which revealed a paracentral bulge at L4-5 and a large HNP at L5-S1. Dr. Grubb indicated that surgery may be necessary and recommended a myelogram and post-myelogram CT Scan.
48. The chart note for December 10, 1997, reported that the myelogram and CT Scan indicated a small paracentral bulge at L4-5 with a larger bulge at L5-S1 and a slight encroachment of the nerve root at L5.
49 Plaintiff was seen on December 17, 1997, at which time he complained that he was hurting all the time with pain primarily in his right hip and extending to his right leg, into his right foot. Dr. Grubb recommended a L4-5 discectomy. Plaintiff returned on January 28, 1998, and indicated that he would proceed with L4-5, L5-S1 decompression surgery.
50. Plaintiff was examined on February 20, 1998. This examination revealed an antalgic gait to the right, difficulty getting up on toes and heels, limited lumbar flexion, loss of lumbar lordosis, point tenderness at L4-5, L5-S1 midline, reflexes at 1+, and positive straight leg raising at 55 degrees.
51. On March 19, 1998, plaintiff had surgery which consisted of a L4-5 and L5-S1 interlaminar decompression and bilateral recess decompression and right L4-5 discectomy.
52. Plaintiff was examined on May 20, 1998, at which time his examination revealed a normal gait (with use of a cane), normal heel and toe walking, forward flexion within 10 inches of the floor, and negative straight leg raising. Plaintiff continued with some lower extremity pain which Dr. Grubb suggested was vascular in nature.
53. Dr. Grubb was deposed on November 17, 2000, in conjunction with the hearing before Deputy Commissioner Holmes. In this deposition, Dr. Grubb opined that plaintiff's low back problems are related to and were caused by his injury at work in 1992. In particular, Dr. Grubb described a pain profile completed by plaintiff which indicated pain radiating down plaintiff's right hip and the posterior thigh to his knee. Dr. Grubb explained that plaintiff's low back and lower extremity problems were caused by multilevel degenerative disc disease, lateral recess stenosis, and herniated disc. Dr. Grubb explained that the surgery he performed in 1998 was to address the herniated discs at L4-5 and L5-S1.
54. Although Dr. Grubb changed his opinion concerning the cause of plaintiff's low back injuries in his 2000 deposition, a review of the deposition and Dr. Grubb's medical records (as outlined above) reveals that this opinion lacked medical or scientific basis. Dr. Grubb testified that he did not recall questioning plaintiff about the nature of his low back and leg symptoms prior to the October 1991 accident. Dr. Grubb testified that it was possible that the herniated discs at L4-5 and L5-S1 arose or occurred after the July 1992 injury and were completely unrelated to the July 1992 injury. Dr. Grubb expressed that he did not know whether plaintiff weakened his L4-5 and L5-S1 discs prior to July 1992. Dr. Grubb testified that the low back injury of July 1992 might have been nothing more than a muscle strain and that the complaints of low back and related pain may have been nothing more than flare-ups from plaintiff's chronic back problems that date back to the 1970s. Further, the pain diagram, as it related to lower extremity radiculopathy, was not explored with plaintiff when it was made and could have indicated pain that pre-existed the 1992 injury.
55. The greater weight of the evidence is that plaintiff's herniated discs at L4-5 and L5-S1 were not caused by or aggravated by plaintiff's 1991 and 1992 compensable injuries. On July 13, 1992, plaintiff had a myelogram and an enhanced CT Scan which revealed "minor bulging at L2-3 and L3-4." No injury was found to the L4-5 and L5-S1 discs from these studies. Dr. Shupeck's July 13, 1992, consultation further indicates that plaintiff had no lower extremity problems from his low back injury. In addition, a review of the medical records, as outlined above, is that plaintiff exhibited a pattern of sporadic low back pain and stiffness consistent with degenerative disc disease that was aggravated by his July 1992 injury. Plaintiff, however, did not consistently or progressively exhibit problems with straight leg raising or other radicular problems to suggest that plaintiff sustained a herniated disc from the 1992 injury. In November and December 1994, when Dr. Grubb believed that plaintiff may have a herniated disc, Dr. Grubb reported that the herniation may be "new" rather than a continuation from plaintiff's 1992 injury. Plaintiff's straight leg raising examinations were normal until September 1997, and plaintiff reported several changes in his symptoms in 1996 and 1997 before this finding appeared. In December 1996, Dr. Grubb was not able to determine whether plaintiff's low back problems were related to his 1992 injury. In August 1997, Dr. Grubb began to suspect a herniated disc and ordered a MRI of the lumbar spine which for the first time illustrated abnormality to the L4-5 and L5-S1 levels. Positive straight leg raising was first reported in September 1997. Although Dr. Grubb changed his opinion at the deposition in 2000, he did not provide a reasonable basis for this change of opinion and did not negate other potential causes for plaintiff's condition or explain how the 1992 accident was the probable cause as opposed to other potential causes for the herniated discs. Therefore, Dr. Grubb's current opinion appears to be speculation and conjecture rather than based on medically accepted differential diagnosis. The greater weight of the evidence is that plaintiff's 1992 injury includes a low back strain and an aggravation of plaintiff's degenerative disc disease, but that this injury does not include the herniated discs at L4-5 and L5-S1 for which surgery was performed in 1998.
56. Plaintiff's spinal surgery was not related to and was not medically necessary for the injuries that plaintiff sustained for his low back injury in July 1992. The parties' acceptance of a low back strain on a Form 21 Agreement and the Deputy Commissioner's subsequent Opinion and Award to the effect that plaintiff sustained a back injury does not necessarily place on defendants the responsibility for all medical care plaintiff may need for low back problems. The Defendants had the burden to establish the extent of the compensable injury and that the treatment made the basis of this claim was not related to Plaintiff's compensable injury. Defendants have rebutted any presumption that could arise from the prior Opinion and Award by establishing that the conditions necessitating surgery were not casually related to the compensable injury. Defendants are responsible for medical care reasonably required to effect a cure, give relief, and to lessen the period of disability for the workers' compensation injury. Conversely, defendants are not responsible for medical care which is not related to the compensable injury.
 ***********
The foregoing additional findings of fact engender the following:
 CONCLUSIONS OF LAW
1. Defendants are entitled to question whether medical care is related to a compensable injury and whether the care is thereby compensable under a prior Opinion and Award. See Parsons v. The Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997). In this circumstance, the burden to establish that the treatment is not compensable rests with the Defendant. In this case, the Defendant have established that the spinal conditions (i.e., the herniated discs at L4-5 and L5-S1) necessitating the surgery were not casually related to the compensable 1982 injury. Defendants have established by the greater weight of the credible evidence that Plaintiff's compensable low back injury does not include the disc herniations at L4-5 and L5-S1. N.C.G.S. § 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following
 AWARD
1. Plaintiff's request that defendants pay for medical care for diagnosis, examination, treatment, and surgery for plaintiff's L4-5 and L5-S1 disc herniations is DENIED.
2. The prior Orders for sanctions against defendants are vacated.
3. The parties shall pay their respective costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER
rcr:gas